UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSEPH W. FINFROCK,

                    Plaintiff,

vs.                                    Case No.  2:08-cv-886-FtM-29DNF

CHARLIE   CRIST,   FLORIDA   CIVIL
COMMITMENT  CENTER,  T.  BUDZ,  DR.
EMANOILIDIS,   TST   FNU   HUMPREY,
INVESTIGATOR   FNU   RUNGE,   D.C.F.
GEORGE SHELDON,  STATE OF FLORIDA,

                    Defendants.

_____


**<u>ORDER OF DISMISSAL</u>**

**I.**

    This matter comes before the Court upon review of Plaintiff's

Civil Rights Complaint (Doc. #1, Complaint), filed pursuant to 42

U.S.C. § 1983.   *Pro se* Plaintiff filed this action as civil

detainee at the Florida Civil Commitment Center ("FCCC") pursuant

to the Jimmy Ryce Act.[1]

_____

    [1]The Florida legislature enacted the Jimmy Ryce Act, Fla. Stat.
394.910-.913, by which a person determined to be a sexually violent
predator is required to be housed in a secure facility "for
control, care, and treatment until such time as the person's mental
abnormality or personality disorder has so changed that it is safe
for the person to be at large." § 394.917(2).  The Jimmy Ryce Act
was promulgated for the dual purpose "of providing mental health
treatment to sexually violent predators and protecting the public
from these individuals." <u>Westerheide v. State</u>, 831 So. 2d 93, 112
(Fla. 2002); <u>Kansas v. Hendricks</u>, 521 U.S. 346 (1997)(holding that
the Kansas Sexually Violent Predator Act did not establish criminal
proceedings, and involuntary confinement pursuant to the Act was
not punitive). Civil commitment under the Jimmy Ryce Act involves
several steps.  First, the Act requires a mental evaluation of any
(continued...)

## II.

Despite Plaintiff's non-prisoner status,[2] before the Court

grants Plaintiff's motion for leave to proceed *in forma pauperis*

and directs the United States Marshal to serve the Complaint on

Defendants, the Court is required to review the Complaint to

determine whether the complaint is frivolous, malicious or fails to

state a claim.  See 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).  In

---

[1](...continued)
person who has committed a sexually violent offense and is scheduled for release from prison or involuntary confinement. See generally Fla. Stat. § 394.913.  The evaluation is conducted by a multi-disciplinary team of mental health professionals who must determine whether the individual meets the definition of a "sexually violent predator."  After the evaluation, the state attorney may file a petition with the circuit court alleging that the individual is a sexually violent predator subject to civil commitment under the Act.  Id.  If the judge determines that probable cause exists that the individual is a sexually violent predator, then the judge will order the individual to remain in custody.  Id. § 394.915.  Thereafter, a jury trial, or a bench trial if neither party requests a jury trial, will commence.  Id. If the jury finds that the individual is a sexually violent predator by clear and convincing evidence, then the individual will be committed to the custody of the Department of Children and Family Services for "control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large."  Id. § 394.917.

[2]The Court recognizes that certain portions of the Prison Litigation Reform Act are not applicable to Plaintiff as a civil detainee. Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002). The United States Court of Appeals for the Eleventh Circuit previously found that a district court did not err by dismissing a complaint filed by a civil detainee for failure to state a claim under the *in forma pauperis* statute, 28 U.S.C. Section 1915 (e)(2)(B).  Id. at 1260.  Other Courts have also found that section 1915(e)(2)(B) is not limited to prisoners, but applies to all persons proceeding *in forma pauperis*. See Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001).

essence, § 1915(e)(2) is a screening process, to be applied *sua sponte* and at any time during the proceedings. The Court, nonetheless, must read Plaintiff's *pro se* allegations in a liberal fashion. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003).

A complaint filed *in forma pauperis* which fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) is not automatically frivolous. Neitzke v. Williams, 490 U.S. 319, 328 (1989). Rather, the test for granting a § 1915 dismissal is whether the claim lacks arguable merit either in law or fact. Id. at 325; Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002); Bilal v. Driver, 251 F.3d 1346 (11th Cir. 2001). Additionally, § 1915 requires dismissal when the legal theories advanced are "indisputably meritless," Nietzke, 490 U.S. at 327; when the claims rely on factual allegations which are "clearly baseless" Denton v. Hernandez, 504 U.S. 25, 32 (1992); or, when it appears that the plaintiff has little or no chance of success. Bilal, 251 F.3d at 1349.

### III.

Plaintiff claims his constitutional rights were violated stemming from an incident that occurred on August 8, 2008, at the FCCC. Complaint at 9. Plaintiff attributes liability on Defendants when another FCCC civil detainee, who will be referred to as "RW," assaulted him. Id. at 3-4. Plaintiff states that RW attacked him while he was waiting to talk to Ms. Simmons about his

legal mail.  Id. at 7.  Plaintiff avers that RW "walk[ed] up behind him on the right side and punch[ed] him in the face twice, once on the right check [sic] and in the lips, breaking his top plate in three places."  Id. at 7.  Plaintiff admits that he hit RW back, but only in an effort to protect himself.  Id. at 5, 8.  Plaintiff contends that "[i]t is staff's duty here to protect plaintiff and others from residents like [RW], of which they have not done!"  Id. at 6.  Plaintiff also challenges the disciplinary report he received as a result of the altercation, alleging that Defendant Humphrey, who witnessed the attack, "falsified facts" as she takes "sides with the black residents."  Id. at 3, 5.  Plaintiff states that he requested to press charges against RW, but the Desoto County Sheriff's Office will not file charges against RW because other black FCCC residents gave statements supporting RW.  Id. Plaintiff further avers that the FCCC is "trying to cover up this assault as they have covered up other assaults."  Id. at 4.  Since the assault, Plaintiff claims that other black FCCC residents have threatened him.  Id. at 3.

### IV.

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that: (1) Defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred

-4-

under color of state law.  <u>Arrington v. Cobb County</u>, 139 F.3d 865,

872 (11th Cir. 1998); <u>U.S. Steel, LLC v. Tieco, Inc.</u>, 261 F.3d

1275, 1288 (11th Cir. 2001).

The Supreme Court has soundly rejected the possibility of

*respondeat superior* as a basis of liability in § 1983 actions.

<u>Monell v. Dep't of Soc. Serv.</u>, 436 U.S. 659, 690-692 (1978).

Instead, supervisory liability can be imposed under § 1983 "either

when the supervisor personally participates in the alleged

constitutional violation or when there is a causal connection

between the actions of the supervising official and the alleged

constitutional deprivation."  <u>Brown v. Crawford</u>, 906 F.2d 667, 671

(11th Cir. 1990).  Absent personal participation by a defendant, a

plaintiff must show an affirmative causal connection between the

defendant's acts and the alleged constitutional deprivation.

<u>Harris v. Ostrout</u>, 65 F.3d 912, 917 (11th Cir. 1995).  The causal

connection can be established "when a history of widespread abuse

puts the responsible supervisor on notice of the need to correct

the alleged deprivation, and he fails to do so [,]" or when a

custom or policy of the supervisor results in deliberate

indifference to constitutional rights.  <u>Cottone v. Jenne</u>, 326 F.3d

1352, 1360 (11th Cir. 2003)(quoting <u>Gonzalez v. Reno</u>, 325 F.3d

1228, 1234 (11th Cir. 2003)).  "The deprivations that constitute

widespread abuse sufficient to notify the supervising official must

be obvious, flagrant, rampant and of continued duration, rather

than isolated occurrences."  <u>Brown</u>, 906 F.2d at 671.

Alternatively, facts supporting an inference that the supervisor directed the subordinates to act unlawfully or knew that they would do so and failed to stop them establishes a causal connection. Cottone, 326 F.3d at 1360 (quoting Gonzalez, 325 F.3d at 1234) (remaining citations omitted).

Plaintiff names as Defendants: Charlie Crist, the Florida Civil Commitment Center, T. Budz, Dr. Emanoilidis, TST Humphrey, Investigator Runge, "D.C.F. George Sheldon," and the State of Florida. The "State of Florida" and the Florida Civil Commitment Center are not *sui juris*. Further, there are no allegations in the Complaint regarding Governor Charlie Crist, Investigator Runge, and George Sheldon's involvement in the alleged constitutional violation. Thus, Defendants the State of Florida, the Florida Civil Commitment Center, Charlie Crist, Investigator Runge, and George Sheldon are dismissed, *sua sponte*, from this action.

With regard to Defendants Dr. Emanoilidis, Humphrey, and Budz, the Complaint alleges a failure to protect claim. Under Youngberg v. Romeo, 457 U.S. 307 (1982), the Due Process Clause of the Fourteenth Amendment ensures the involuntarily civilly committed a liberty interest in reasonably safe conditions of confinement, freedom from unreasonably bodily restrains, and such minimally adequate training as might be required to ensure safety and freedom from restraint. Id. at 322. The rights of the involuntarily civilly committed are "at least as extensive" as the Eighth

Amendment rights of the criminally institutionalized. <u>Dolihite v.</u>
<u>Maughon</u>, 74 F.3d 1027, 1041 (11th Cir. 1996).  Therefore, the case
law that has developed under the Eighth Amendment sets forth the
contours of the due process rights of the civilly committed.  <u>Id.</u>
Indeed, FCCC staff have a duty to protect the civilly detained from
violence at the hands of the other civilly detained residents.  <u>See</u>
<u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994)(applying analysis in a
prison context).  However, not every injury "translates into a
constitutional liability."  <u>Id.</u> at 834.

In the case *sub judice*, the Complaint must set forth facts
showing that state officials were deliberately indifferent to a
substantial risk of Plaintiff's safety.  <u>Purcell v. Toombs County,</u>
<u>GA.</u>, 400 F.3d 1313, 1319 (11th Cir. 2005).  "Deliberate
indifference is not the same thing as negligence or carelessness."
<u>Maldonado v. Snead</u>, 168 Fed. Appx. 373 (11th Cir. 2006)(citing <u>Ray</u>
<u>v. Foltz</u>, 370 F.3d 1079, 1083 (11th Cir. 2004)).  "Merely negligent
failure to protect" an inmate from an attack does not give rise to
a § 1983 claim.  <u>Carter</u>, 352 F.3d at 1350.

A plaintiff must demonstrate that the defendant was aware of
specific facts from which an inference could be drawn that a
substantial risk of serious harm exists and that the prison
official drew that inference.  <u>Purcell</u>, 400 F.3d at 1319-20; <u>Carter</u>
<u>v. Galloway</u>, 352 F.3d 1346, 1349 (11th Cir. 2003).  In other words,
to show that an official had subjective knowledge, the court is to
inquire whether the defendant was aware of a "particularized threat

or fear felt by [the plaintiff]." Carter, 352 F.3d at 1350. "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment" and does not give rise to a constitutional violation. Farmer, 511 U.S. at 838. Whether an official had requisite knowledge is a question of fact that may be demonstrated by circumstantial evidence. Id. at 842. Consequently, evidence of past attacks which were "long-standing, pervasive, well-documented, or expressly noted by [ ] officials in the past" may be sufficient to find that the official had actual knowledge. Id. However, general knowledge that a particular inmate is a problem inmate with a well-documented history of prison disobedience who is prone to violence is not sufficient. Carter, 352 F.3d at 1349. See also McBride v. Rivers, 170 Fed. Appx. 648 (11th Cir. 2006).

Here, the Complaint does not even allege that the Defendants had a general knowledge of RW's disobedience. Instead, Plaintiff vaguely claims that the FCCC "covered up" other assaults by RW. See Complaint at 4. The Complaint provides no other facts in support of this allegation of cover up. The Complaint contains no allegations that Plaintiff told any of the Defendants that he felt threatened by RW. In fact, Plaintiff acknowledges that a verbal altercation had occurred early in the morning between himself and RW, but Plaintiff neither states that he reported the incident; nor, did he report that RW had made any threats against him prior

to the altercation.  Instead, Plaintiff's claim as to Defendant
Humphrey is that she was too "preoccupied to hear Washington
threaten him before hitting [him] twice in the face . . . ."
Complaint at 6.  These facts illustrate how quickly the incident
transpired, and, at most, support a conclusion that Humphrey may
have exhibited carelessness or negligence, not deliberate
indifference.

The Complaint does not allege that Defendant Budz personally
participated in the incidents.  Instead, Plaintiff attempts to
attribute liability on Defendant Budz for the practice of allowing
civil detainees to attack each other at another civil detention
center located out of the State.  Plaintiff states that Defendant
Budz "allowed this same thing to occur in the facility he ran in
Illinois."  Complaint at 10 (citing Brown v. Budz, 398 F.3d 904
(7th Cir. 2005)).

"A custom is an unwritten practice that is applied
consistently enough to have the same effect as a policy with the
force of law."  Goebert v. Lee County, 510 F.3d 1312, 1332 (11th
Cir. 2007)(citations omitted).  "Demonstrating a policy of custom
requires "show[ing] a persistent and wide-spread practice."  Id.
(citations omitted).  The Complaint is also flawed with regard to
claim against Defendant Budz.  The Complaint does not allege a
history of widespread abuse that would have placed Budz on notice
of a problem.  Alternatively, there are no facts supporting an
inference that Budz directed the subordinates to act unlawfully or

knew that they would do so and failed to stop them.  See Cottone,
326 F.3d at 1360 (quoting Gonzalez, 325 F.3d at 1234) (remaining
citations omitted).     Plaintiff  also alleges that Defendant
Emanoilidis' determination that Plaintiff was guilty of fighting
was contrary to "all of the evidence."  Complaint at 9.  Plaintiff
further claims that Defendant Humphrey "falsified facts" on his
disciplinary report for the altercation.  However, Plaintiff cannot
challenge the disciplinary report because he has not shown that the
disciplinary report was expunged, reversed, invalidated, or called
into question by the issuance of a federal writ of habeas corpus;
thus, he cannot state a § 1983 action relating to his underlying
charge consistent with Heck.   Heck, 512 U.S. 486-87; compare with
Muhammad v. Close, 540 U.S. 749, 754-55 (2004) (holding that a
plaintiff's § 1983 challenge of state prison disciplinary hearing
when  the  Plaintiff  did  not  challenge  conviction,  disciplinary
action, or seek expungement of the misconduct finding, but instead
challenged his six-days pre-hearing confinement was not barred by
Heck because it was not "construed as seeking a judgment at odds
with his conviction").

ACCORDINGLY, it is hereby

**ORDERED**:

1.  Plaintiff's Civil Rights Complaint (Doc. #1) is **DISMISSED**
without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and his
motion to proceed *in forma pauperis* (Doc. #2) is **DENIED.**

2. The Clerk of Court shall enter judgment accordingly, terminate any pending deadlines or motions, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___23rd___ day of June, 2009.

_John E. Steele_
JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record